## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| PHOEBE SCOTT, | |
| Plaintiff, | Civil Action No.: |
| v. | 1:21-cv-00090 |
| PHOEBE PUTNEY MEMORIAL HOSPITAL, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Phoebe Scott and brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* Plaintiff alleges that Defendant Phoebe Putney Memorial Hospital, Inc. subjected Plaintiff to retaliation after she opposed Defendant's discriminatory practices, discriminated against Plaintiff based on disability, including through its failure to provide a reasonable accommodation for her disability, and subjected Plaintiff to retaliation after she requested a reasonable accommodation, respectfully showing the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of Title VII of the Civil Rights Act, the Americans with Disabilities Act, and the Rehabilitation Act.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was employed, and the events underlying this action occurred, in Albany, Dougherty County, Georgia, which is located within this judicial district.

**PARTIES**

3.

Plaintiff Phoebe Scott (hereinafter, "Plaintiff" or "Scott") is a citizen of the United States and a resident of Georgia.  At all times relevant to this suit, Ms. Scott was employed with Defendant Phoebe Putney Memorial Hospital, Inc.

4.

At all relevant times, Ms. Scott was considered a covered, non-exempt employee under Title VII of the Civil Rights Act, the Americans with Disabilities Act, and the Rehabilitation Act.

5.

Defendant Phoebe Putney Memorial Hospital, Inc. (hereinafter, "Defendant") is a domestic nonprofit corporation, organized under the laws of the State of Georgia.  Defendant may be served with process by delivering a copy of the Summons and Complaint to its Registered Agent, Dawn G. Benson, located at 417 Third Avenue, Albany, Dougherty County, Georgia 31701.

6.

Defendant is engaged in in an industry affecting interstate commerce and has employed far in excess of fifteen employees in every week of 2017 and preceding years and is otherwise a covered entity and employer within the meaning of Title VII of the Civil Rights Act and the Americans with Disabilities Act.

7.

Defendant is a covered employer under the Rehabilitation Act because Defendant receives federal grants of assistance and contracts with the federal government.

**STATEMENT OF FACTS**

8.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 7, as if the same were set forth herein.

9.

Ms. Scott was employed with Defendant on three different occasions, and she worked most recently in Defendant's Central Staffing Department as a "Safety Partner," an unlicensed assistive personnel position tasked with supervising patients on the medical and surgical floors of Defendant's hospital.

10.

At all times at issue, Ms. Scott's performance in her position was exemplary. Ms. Scott exceeded the qualifications for this position, and she was successfully performing her job throughout her tenure.

11.

As the result of a traumatic event that Ms. Scott experienced while she was employed, as described herein, she was diagnosed with depression, severe anxiety, panic attacks, and insomnia.

12.

The aforementioned conditions are mental health conditions that also caused Ms. Scott to experience difficulty concentrating and performing routine daily activities, weight loss, insomnia, social withdrawal, and loss of interest in pleasurable activities.

13.

Moreover, situations that remind individuals like Ms. Scott of the traumatic incident giving rise to these conditions may trigger the person to either experience the aforementioned symptoms or exacerbate existing symptoms.

14.

Ms. Scott's medical conditions, both individually and in the aggregate, substantially limit major life activities such as caring for oneself, performing manual tasks, thinking and concentrating, and the ability to work.

15.

Defendant was aware of Ms. Scott's medical conditions.

16.

However, the aforementioned medical conditions in no way limited Ms. Scott's ability to perform the essential functions of her position.

17.

Ms. Scott's began her last period of employment with Defendant on September 12, 2016, and she transferred into her most recent position in February 2017.

18.

From February 2017 through mid-July 2017, Ms. Scott's employment was largely uneventful.

19.

However, in July 2017, one of Ms. Scott's co-workers, Craig Kelson, a registered nurse (hereinafter, "Nurse Kelson") began making advances of a sexual nature toward Ms. Scott.

20.

Nurse Kelson had been working for Defendant for much longer than Ms. Scott and he was regarded by Defendant as one of its more valuable members of the nursing staff.

21.

One day in July 2017, Ms. Scott was supervising patients in each of their private hospital rooms.

22.

Nurse Kelson made several comments to Ms. Scott that day that she did not feel were appropriate in the workplace and made her uncomfortable.  For example, Nurse Kelson said that Ms. Scott reminded him of his ex-girlfriend, told her how attractive she was, and asked her questions about her dating life and relationships.

23.

Ms. Scott also noticed that Nurse Kelson was repeatedly showing up in rooms where Ms. Scott was working, and it appeared to Ms. Scott that Kelson was following her.

24.

Nurse Kelson's conduct escalated soon thereafter.  Ms. Scott was supervising a patient, who was not conscious and did not see what occurred, when Nurse Kelson sexually assaulted Ms. Scott in the patient's room and bathroom.

25.

Ms. Scott tried to escape, but Nurse Kelson prevented Ms. Scott from leaving the room.

26.

The assault only ceased just before another employee entered the patient's room.  While the other employee did not see what occurred, Ms. Scott was so visibly shaken by the attack that

the employee may have seen that Ms. Scott was in shock and unable to answer questions about the patient.

27.

However, Nurse Kelson remained in the room when the other employee arrived, despite there not being any legitimate reasons for him to remain.  Ms. Scott felt like Nurse Kelson only stayed in the room to prevent Ms. Scott from telling anyone what had occurred.

28.

When the other employee said that the patient needed to be transported to Defendant's imaging department, Ms. Scott asked that she be able to go with the patient in order to get out of the room with Nurse Kelson.

29.

When Ms. Scott arrived in the imaging department, she asked one of the radiologists to call the house supervisor so that Ms. Scott could report what had just occurred.

30.

Ultimately, the house supervisor took down Ms. Scott's complaint and then contacted investigators with the Albany Police Department, who arrived on scene and met with Ms. Scott soon thereafter.

31.

As a result of the trauma that she experienced, Defendant referred Ms. Scott to the Employee Assistance Program, and Ms. Scott began working with a licensed professional counselor.

32.

Defendant also permitted Ms. Scott to remain out of work on leave for around one week.

33.

Ms. Scott began working with the counselor during her leave.  Initially, it was the counselor's belief that Ms. Scott should not return to work until she first received additional mental health treatment, possibly including medication to treat her trauma-related condition.

34.

However, at some point, Ms. Scott's counselor spoke to one of Defendant's representatives in the Human Resources Department, Brenda Johnson, in order to discuss Ms. Scott's return to work.

35.

Upon information and belief, the conversation between the counselor and Ms. Johnson turned toward the topic of what accommodations could be provided in the workplace.  After the conversation, the counselor no longer felt like Ms. Scott needed to remain on leave or move out of the department where the traumatic event occurred.  Instead, Defendant was willing to provide an "accommodation" of allowing Ms. Scott to keep the door open while she supervised patients, and this apparently satisfied the counselor.

36.

When Ms. Scott discussed this development with the counselor, Ms. Scott felt like Ms. Johnson had pressured the counselor into agreeing with the accommodation that Ms. Johnson proposed.

37.

Ms. Scott felt like her counselor was no longer acting in her best interests.

38.

Even if the trust between the counselor and Ms. Scott had not been damaged by the conversation with Human Resources, Ms. Scott has utilized the maximum number of sessions provided by the Employee Assistance Program.

39.

In the last week of July, Ms. Scott attempted to return to work.

40.

Consistent with its proposed accommodation, Defendant allowed Ms. Scott to keep the door to patient rooms open during her supervision.

41.

However, allowing the door to remain open did not alleviate symptoms of trauma that Ms. Scott felt by not being visible by other coworkers or security cameras.

42.

However, allowing the door to remain open did not alleviate the symptoms of trauma that Ms. Scott felt by interacting with patients with mental health disorders who were the same gender as the person who attacked her.

43.

Ms. Scott as though allowing the door to remain open to patient's private rooms was a breach of patient's right to privacy.

44.

The accommodation provided by Defendant of allowing Ms. Scott to keep the door to patient rooms open during her supervision did not allow Ms. Scott to do her job specifically because of her disabilities.

45.

Ultimately, Ms. Scott found the experience of returning to her same position in the location that the incident had occurred so traumatizing that she felt like she needed to have more time out of work.

46.

Additionally, based on her interactions with Human Resources, Ms. Scott began to feel as though Defendant was blaming Ms. Scott for Defendant having to terminate one of its most valued nurses.

47.

Ms. Scott also began to feel like Defendant no longer wanted to employ Ms. Scott.

48.

Defendant denied Ms. Scott's request for additional paid leave.

49.

Instead, Defendant told Ms. Scott that she could take an additional thirty days of unpaid leave.

50.

Toward the end of Ms. Scott's leave, she contacted Human Resources and explained that she was not comfortable in her position, both because of the incident that had occurred on her floor and how the isolation in her position was further traumatizing.   She also explained that the accommodation that Defendant offered had not been effective.

51.

In response, Ms. Johnson told Ms. Scott that she would have thirty days to find another position.  Ms. Johnson also explained that Ms. Scott should find and apply for the positions online,

but that it would be in the discretion of each department's manager whether to accept Ms. Scott's application.

52.

Ms. Johnson also warned Ms. Scott that if she did not find another position in the thirty-day period, she would be terminated.

53.

On September 22, 2017, Defendant reclassified Ms. Scott's employment to the "1002 job class," meaning that Ms. Scott would be kept on the employment rolls for thirty days. Purportedly, if Ms. Scott had found a new position within that period, she could continue working without a break in service or benefits.

54.

Over the course of the next month, Ms. Scott applied for over 100 open positions with Defendant.

55.

Ms. Scott worked closely with Defendant's outside recruiting service, which told Ms. Scott that she met the qualifications for approximately 70 of the positions for which she submitted an application.

56.

After submitting applications, Ms. Scott also participated in numerous telephone interviews with the outside recruiting service. On numerous occasions, the recruiter told Ms. Scott that she had "passed" the phone interviews and her application would be sent to Defendant's internal hiring department. Once again, Ms. Scott was told by the recruiter that department managers would be the person with the ultimate discretion..

57.

Even though Ms. Scott was careful to apply only for positions that did not require a license and she otherwise met the qualifications, Ms. Scott was not selected for any position for which she applied.

58.

Defendant refused to even invite Ms. Scott to participate in an in-person interview regarding any of her applications.

59.

Moreover, even after Defendant rejected each of Ms. Scott's applications, Defendant continued to solicit applications for each position.

60.

In November 2017, Ms. Scott met with Human Resources.  Ms. Scott provided a list of all positions that she had applied for, but she explained that she had not received any offers.

61.

The Human Resources representative then told Ms. Scott that her employment was terminated because she was not able to find another position.

62.

After Defendant terminated Ms. Scott's employment, it told other employees that Ms. Scott was terminated for stealing time and because she had had a relationship with Nurse Kelson.

Procedural/Administrative Background

63.

On or about December 23, 2017, Ms. Scott submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that she had been

subjected to retaliation and discrimination based on disability.  The EEOC assigned Ms. Scott Charge Number 410-2018-00421.

64.

Defendant had notice of Ms. Scott's Charge of Discrimination, participated in the proceedings before the EEOC, and was represented by counsel during said proceedings.

65.

The EEOC ultimately issued a Determination on January 27, 2021, finding that Ms. Scott's Charge had merit.  At the same time, the EEOC invited the parties to participate in conciliation of Ms. Scott's claims.

66.

After conciliation failed, the EEOC issued a Notice of Right to Sue dated February 10, 2021, which Ms. Scott received thereafter.

67.

Ms. Scott has exhausted her administrative remedies as to her Charge of Discrimination and she is filing the instant action within ninety days of the EEOC's issuance and her receipt of the Notice of Right to Sue.

### COUNT I:
### RETALIATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

68.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 67, as if the same were set forth herein.

69.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees because an employee has opposed any practice made an unlawful employment practice or because an employee has made a charge or participated in other protected activity.  *See* 42 U.S.C. § 2000e-3(a).

70.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.  *See* 42 U.S.C. §§ 2000e & 2000e-1.

71.

In July 2017, one of Defendant's employees subjected Plaintiff to harassment based on her sex that should be considered sufficiently severe in nature.

72.

Plaintiff opposed this harassment, reported the harassment to a member of Defendant's management, expressed her opposition to Human Resources, and filed a complaint with law enforcement.

73.

Defendant was aware that Plaintiff had opposed the harassment of which she had been subjected.

74.

After Plaintiff opposed the harassment, Defendant refused to provide Plaintiff with a reasonable accommodation or engage in the interactive process, rejected Plaintiff's application for open positions in other departments, and ultimately terminated Plaintiff's employment all because Plaintiff had opposed the discriminatory practices of which she had been subjected.

75.

Defendant's conduct as alleged herein constitutes retaliation in violation of Title VII of the Civil Rights Act.

76.

Plaintiff will prove that Defendant's stated reasons for its conduct were not the true reasons but, instead, were pretext to hide Defendant's retaliatory animus.

77.

Plaintiff has been injured by Defendant's unlawful retaliation and is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay, reinstatement or front pay, compensatory and punitive damages of not less than $300,000.00, injunctive relief, and attorney's fees and costs of litigation all in an amount to be proven at trial.

**COUNT II:**
**DISCRIMINATION BASED ON DISABILITY**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

78.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 67, as if the same were set forth herein.

79.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

80.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-

exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

81.

As alleged herein, Plaintiff was employed with Defendant, was performing her duties in her position, and she is otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

82.

As alleged herein, Plaintiff has disabilities, a history of disabilities, and was perceived by Defendant as having disabilities that substantially limit a number of major life activities.  As alleged herein, the aforementioned mental health conditions substantially limit a number of Plaintiff's major life activities.

83.

Specifically, Plaintiff suffers from depression, severe anxiety, panic attacks, and insomnia.

84.

Defendant was aware of Plaintiff's disabilities.

85.

After Plaintiff Defendant became aware of Plaintiff's disabilities, Defendant refused to provide Plaintiff with a reasonable accommodation or engage in the interactive process, rejected Plaintiff's application for open positions in other departments, and ultimately terminated Plaintiff's employment all because of Plaintiff's disabilities.

86.

Plaintiff has been injured by Defendant's discrimination based on disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including back pay,

reinstatement or front pay, compensatory and punitive damages of not less than $300,000.00, injunctive relief, and attorney's fees and costs of litigation all in an amount to be proven at trial.

## COUNT III:
## DISCRIMINATION BASED ON DISABILITY
## IN VIOLATION OF THE REHABILITATION ACT

87.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 67, as if the same were set forth herein.

88.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

89.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States government, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

90.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

91.

For the reasons set forth in Count II, *supra*, and expressly incorporated herein, Defendant subjected Plaintiff to discrimination based on disability.

92.

Plaintiff has been injured by Defendant's discrimination due to disability, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

## COUNT IV:
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

93.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 67, as if the same were set forth herein.

94.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

95.

Discrimination based on disability includes an employer's failure to make a "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

96.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

97.

As alleged herein, Plaintiff was employed with Defendant, was performing her duties in her position, and she is otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

98.

As alleged herein, Plaintiff has disabilities, a history of disabilities, and was perceived by Defendant as having disabilities that substantially limit a number of major life activities.

99.

Specifically, Plaintiff suffers from depression, severe anxiety, panic attacks, and insomnia. As alleged herein, the aforementioned mental health conditions substantially limit a number of Plaintiff's major life activities.

100.

Defendant was aware of Plaintiff's disabilities.

101.

Defendant was also aware of Plaintiff's need for a reasonable accommodation.

102.

Defendant knew that the sole accommodation that it offered to Plaintiff – that she be permitted to keep doors to patients' rooms open during her supervision – was not going to be effective in enabling Plaintiff to do her job despite having a disability.

103.

In August 2017, Plaintiff requested that, as a result of her disabilities and incident that caused and/or exacerbated her disabilities, that Defendant provide Plaintiff with a reasonable

accommodation in the form of transferring Plaintiff to a vacant position that existed and that she was qualified.

104.

Defendant refused to reassign Plaintiff to a vacant position, instead requiring Plaintiff to attempt to obtain another position herself.

105.

The accommodations requested by Plaintiff remained available, would have been effective, and would not have posed an undue hardship on Defendant.

106.

Defendant failed and refused to provide Plaintiff with the accommodations that she requested.

107.

Defendant also failed to engage in the interactive process to explore other accommodations that may have been available and would have been effective.

108.

Plaintiff took substantial efforts to attempt to obtain another position that was both vacant and for which she qualified.  Despite Plaintiff's efforts, Defendant failed and refused to consider Plaintiff's applications for the position that she had applied.

109.

As a direct result of Defendant's failure to provide a reasonable accommodation and refusal to engage in the interactive process, Defendant terminated Plaintiff's employment in or around October 2017.

110.

Plaintiff has been injured by Defendant's discrimination based on disability due to its failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including back pay, reinstatement or front pay, compensatory and punitive damages of not less than $300,000.00, injunctive relief, and attorney's fees and costs of litigation all in an amount to be proven at trial.

## COUNT V:
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF THE REHABILITATION ACT

111.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 67, as if the same were set forth herein.

112.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

113.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States government, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

114.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

115.

For the reasons set forth in Count IV, *supra*, and expressly incorporated herein, Defendant discriminated against Plaintiff based on disability due to its failure to provide a reasonable accommodation.

116.

Plaintiff has been injured by Defendant's discrimination due to its failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

**COUNT VI:**
**RETALIATION**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

117.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 67, as if the same were set forth herein.

118.

The Americans with Disabilities Act prohibits covered entities from discriminating against any individual because such individual has opposed any act or practice made unlawful by the Americans with Disabilities Act or because said individual has filed a Charge of Discrimination. 42 U.S.C. § 12203(a).

119.

The Americans with Disabilities Act prohibits covered entities from coercing, threatening or interfering with any individual in the exercise or enjoyment of her rights under the Americans with Disabilities Act.  42 U.S.C. § 12203(b).

120.

In or around August 2017, Plaintiff attempted to exercise her rights provided by the Americans with Disabilities Act by requesting a reasonable accommodation for Plaintiff's disabilities.

121.

Defendant was aware of Plaintiff's request for a reasonable accommodation.

122.

In or around September 2017, Defendant rejected Plaintiff's applications for open positions for which she was qualified solely on the basis of and because Plaintiff had requested a reasonable accommodation.

123.

Plaintiff has been injured by Defendant's retaliatory conduct, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including back pay, reinstatement or front pay, compensatory and punitive damages of not less than $300,000.00, injunctive relief, and attorney's fees and costs of litigation all in an amount to be proven at trial.

**COUNT VII:**
**RETALIATION**
**IN VIOLATION OF THE REHABILITATION ACT**

124.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 67, as if the same were set forth herein.

125.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

126.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States government, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

127.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

128.

For the reasons set forth in Count VI, *supra*, and expressly incorporated herein, Defendant subjected Plaintiff to retaliation after she engaged in activities protected by the Americans with Disabilities Act.

129.

Plaintiff has been injured by Defendant's retaliation, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Phoebe Scott respectfully prays for the following relief:

1)      That Summons and Process be issued to Defendant Phoebe Putney Memorial Hospital, Inc., and that said Defendant be served as provided by law;

2)      That this matter be tried before a jury;

3)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for retaliation, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act;

4)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for discrimination based on disability, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

5)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for discrimination based on disability, and grant Plaintiff all relief allowable under the Rehabilitation Act;

6)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

7)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count V for failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Rehabilitation Act;

8)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count VI for retaliation, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

9)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count VII for retaliation, and grant Plaintiff all relief allowable under the Rehabilitation Act;

10)     For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 11th day of May, 2021.

KENNETH E. BARTON III
Georgia Bar No. 301171
M. DEVLIN COOPER
Georgia Bar No. 142447
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
mdc@cooperbarton.com